Ramirez v. Barr
BIA
Weisel, IJ
A208 283 098/099

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of May, two thousand nineteen.

PRESENT:
       ROBERT D. SACK,
       BARRINGTON D. PARKER,
       DEBRA ANN LIVINGSTON,
          *Circuit Judges.*

_____

SONIA YAMILETH RAMIREZ,
MARIA JOSE CASTELLANOS-RAMIREZ,
       *Petitioners,*

       v.                        17-1926
                                   NAC

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,
       *Respondent.*

_____

FOR PETITIONERS:        Nicholas J. Mundy, Brooklyn, NY.

FOR RESPONDENT:        Chad A. Readler, Acting Assistant Attorney General; Brianne Whelan Cohen, Senior Litigation Counsel; Lindsay Corliss, Trial Attorney, Office of Immigration Litigation, United States Department of

Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioners Sonia Yamileth Ramirez ("Ramirez") and Maria Jose Castellanos-Ramirez, natives and citizens of Honduras, seek review of a May 18, 2017, decision of the BIA affirming an October 20, 2016, decision of an Immigration Judge ("IJ") denying Ramirez's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Sonia Yamileth Ramirez, Maria Jose Castellanos-Ramirez*, Nos. A 208 283 098/099 (B.I.A. May 18, 2017), *aff'g* No. A 208 283 098/099 (Immig. Ct. N.Y. City Oct. 20, 2016). We assume the parties' familiarity with the underlying facts and procedural history in this case.

We have reviewed the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings for substantial evidence and legal issues de novo. *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

2

Asylum and Withholding of Removal

An applicant for asylum or withholding of removal "must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for" the claimed persecution. 8 U.S.C. §§ 1158(b)(1)(B)(i) (asylum), 1231(b)(3)(A) (withholding); *Matter of C-T-L*, 25 I. & N. Dec. 341, 346 (B.I.A. 2010) (holding that the "one central reason" standard also applies to withholding of removal). Ramirez asserts that she was targeted and fears persecution on account of her membership in a particular social group of educated Honduran women employed in high-ranking positions. To constitute a particular social group, a group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014); *see Paloka v. Holder*, 762 F.3d 191, 195–97 (2d Cir. 2014). An "immutable characteristic" is one that members of the group "either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Ucelo-Gomez v. Mukasey*, 509

3

F.3d 70, 72-73 (2d Cir. 2007) (internal quotation marks omitted). "Particularity refers to whether the group is sufficiently distinct that it would constitute a discrete class of persons." *Matter of W-G-R-*, 26 I. & N. Dec. 208, 210 (BIA 2014) (internal quotation marks omitted). "To be socially distinct, a group . . . must be perceived as a group by society." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 240. We review for substantial evidence whether an applicant was targeted on account of group membership, *see Edimo-Doualla v. Gonzales,* 464 F.3d 276, 282 (2d Cir. 2006), but review the agency's determination of whether a group is cognizable de novo, *see Paloka*, 762 F.3d at 195. We find no error in the agency's conclusion that Ramirez failed to identify a cognizable social group of "educated Honduran women with high-ranking positions, pursuing a career" or that she was targeted based on those characteristics.

"A particular social group must be defined by characteristics that provide a clear benchmark for determining who falls within the group." *Matter of M-E-V-G-*, 26 I&N Dec. at 239. We have agreed with the BIA's determination that a group based on wealth is not

4

sufficiently particular: "When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the INA." *Ucelo-Gomez*, 509 F.3d at 73.  Ramirez attempts to distinguish her group from the group of wealthy Guatemalans at issue in *Ucelo-Gomez* by asserting that the gang targeted her because it sought to overcome her ability, as a Honduran woman, to hold a "high-ranking" position and her education made her a target because it qualified her for such a position.  But Ramirez did not show that the characteristics of being "educated" or employed in a "high-ranking position" have "commonly accepted definitions" in Honduran society such that the social group has "definable boundaries."  *Matter of W-G-R-*, 26 I. & N. Dec. at 214. Accordingly, Ramirez did not demonstrate that educated, Honduran women with high-ranking positions can be defined with sufficient particularity as required for recognition as a particular social group.  *See Paloka*, 762 F.3d at 195–96.

Moreover, even assuming such a group would be cognizable,

Ramirez did not show that the gang members targeted her for any reason other than money. Her affidavit mentioned that she worked for the institute for Honduran Development and that gangs in Honduras "kill and extort innocent people, especially those who are financially stable." Ramirez testified that she attended university, but that her highest level of completed education was high school, that she worked in administrative roles for a micro-finance company for six years, and that gang members targeted her for extortion because of her employment and her perceived access to company funds. Ramirez did not mention her proposed social group in her application or before the IJ, nor did she testify that the gang targeted her because she was educated or female or because her position with her company was high-ranking or powerful. Although Ramirez's country conditions evidence reveals substantial violence in Honduras, including violence against women, the evidence does not show that women in the workforce, much less those who were educated and in high-ranking positions, are particular targets of gangs. Ramirez established only that she was targeted for extortion because of her perceived wealth and employment status, which, absent more, are not cognizable social groups. *See Ucelo-Gomez*, 509

6

F.3d at 73; *Matter of Acosta*, 19 I. & N. Dec. 211, 234 (B.I.A. 1985) (holding that taxi drivers targeted for persecution did not belong to a social group because membership could be changed).

Because Ramirez did not establish either a cognizable social group or that the gang targeted her for any reason other than her money or perceived access to money, she did not establish her eligibility for asylum of withholding of removal. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i) (asylum), 1231(b)(3)(A) (withholding).

CAT

An applicant for CAT relief must show that "it is more likely than not" that she will be tortured, but need not show any link to a protected ground. *See* 8 C.F.R. § 1208.16(c)(2); *Khouzam v. Ashcroft*, 361 F.3d 161, 168 (2d Cir. 2004). To constitute torture, the harm must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her

legal responsibility to intervene to prevent such activity." *Id*. § 1208.18(a)(7). Cognizable acquiescence "requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it." *Khouzam*, 361 F.3d at 171. In assessing the likelihood of torture, "all evidence relevant to the possibility of future torture shall be considered, including, but not limited to . . . [e]vidence of past torture," the possibility of relocation within the country, "[e]vidence of gross, flagrant or mass violations of human rights . . . and . . . relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3).

The agency did not err in concluding that Ramirez failed to show that the Honduran government will more likely than not acquiesce to her torture by gangs. Ramirez testified that she was first approached by gang members in March 2015, but did not file a police report until June 2015. And she admitted that she could not identify the gang members because they covered their faces and told her not to look at them. Although Ramirez said that the police "did not solve anything" and did not tell her they would protect her, they took the

report and followed up with her. Ramirez does not explain how the police could have solved her problem in the few days between her report and her departure from Honduras. Accordingly, she did not meet her burden of showing that the police would likely acquiesce to her torture by gang members. *See Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2013) ("Evidence that the police were aware of a particular crime, but failed to bring the perpetrators to justice, is not in itself sufficient to establish acquiescence in the crime.").

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9